## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| DARNELL TRIPLETT, | : | Case No. 2:23-cv-2619 |
| | : | |
| Petitioner, | : | |
| | : | |
| vs. | : | Judge Algenon L. Marbley |
| | : | Magistrate Judge Kimberly A. Jolson |
| WARDEN, CORRECTIONS CENTER | : | |
| OF NORTHWEST OHIO, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS

Petitioner Darnell Triplett, an inmate in state custody at the Corrections Center of Northwest Ohio, has filed, with the assistance of counsel, a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1).  Petitioner challenges his conviction and sentence from Delaware County Court of Common Pleas Case No. 2020-CR-1-09-0586, finding Petitioner guilty of trafficking and possession of cocaine and sentencing him to an indefinite term of 11 to 16.5 years imprisonment.  (Doc. 1 at PageID 1).  This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply in Opposition, and the state court record.  (Docs. 1, 5, 6, 9).  The Undersigned **RECOMMENDS** that this action be **DISMISSED with prejudice** as his single ground for relief is non-cognizable.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

The Fifth District Court of Appeals in Delaware County, Ohio, summarized the facts underlying Petitioner's convictions as follows:

{¶7} On September 11, 2020, around 3:15 pm, Dep. Hunter was parked in his cruiser watching northbound traffic on Interstate 71. He noticed a Dodge Charger

that was going at least ten miles under the posted speed limit, and upon running the license plate, found that it was expired out of the state of Pennsylvania. Dep. Hunter was aware at the time that Ohio had tolled the expiration of registrations due to COVID-19, but did not believe Pennsylvania had taken a similar measure. Dep. Hunter pulled out of the cross-over and as he was catching up to the Charger, he observed it move from the center lane into the slow lane directly behind another motorist, which he suspected may have been to evade his cruiser. The deputy observed that the Charger was going approximately sixty-five (65) miles per hour and it was only one car length behind the other motorist, which in his training and experience could cause a crash if the other motorist stopped or slowed down.

{¶8} After Dep. Hunter initiated a traffic stop, the Charger pulled over and the deputy made contact with the driver, [Petitioner]. There were also two female passengers, one in the front passenger seat and one in the backseat. Dep. Hunter told [Petitioner] he had stopped him due to the expired registration and changing lanes too closely to another vehicle. [Petitioner] expressed surprise about the registration, saying the Charger was a rental. Dep. Hunter asked him if he had the rental agreement and [Petitioner] began to rummage in the glovebox. After searching, [Petitioner] said that while he did not have a paper rental agreement, he could pull it up on his e-mail. When asked where they were headed that day, [Petitioner] said he was a resident of Columbus and they were headed to Toledo. After searching his cellphone, [Petitioner] then said he would need to call someone about the rental agreement. [Petitioner] said he had rented the Charger for the week. [Petitioner] produced a registration card, which confirmed the registration had expired on August 31, 2020.

{¶9} Deputy Hunter was concerned that based on the expired registration and the lack of a rental agreement, the Charger may be overdue to be returned to the rental company or stolen. He stated that in his experience, it is not uncommon for it to take two to three weeks before a rental car is reported stolen.

{¶10} Deputy Hunter also explained that this was the first time he had ever seen a rental car with an expired registration. Dep. Hunter also noted that the Charger appeared "lived in" as it was strewn with dust and debris throughout the interior. He stated that there was also a strong odor of car air freshener. The deputy also noted that despite there only being three occupants, there appeared to be five cellphones in the Charger.  The deputy testified that in his experience, "longer term" rentals are often used in drug smuggling to avoid having personal vehicles seized or personal information available by running license plates.

{¶11} Dep. Hunter aired [Petitioner's] identifiers to dispatch and learned that [Petitioner] had an "armed and dangerous" caution due to a prior conviction, and that he was subject to a protection order.  Dep. Hunter contacted Dep. Lee, who was en route to assist, and asked him to contact Enterprise Rent-A-Car to confirm the Charger was not overdue or stolen.  Dep. Hunter then returned to his cruiser and ran [Petitioner's] information, trying to find the names of the protected parties on

2

the protection order to confirm that the female passengers were not the subjects of the order.

{¶12} Dep. Hunter testified that at this point he was intending to have his K9 partner sniff the vehicle, as everything he had observed raised his suspicions that the Charger may contain drugs. After speaking with dispatch and returning to the Charger to obtain identification from the two women, Dep. Hunter confirmed they were not the subjects of the protection order. In preparation for the K9 sniff, Dep. Hunter had [Petitioner] exit the Charger. [Petitioner] was still talking on his cellphone in an apparent effort to find the rental agreement. Dep. Hunter then had Dep. Lee ask the two women out of the Charger, at which point Dep. Lee spotted some marijuana in the passenger door. At this point the deputies still had been unable to confirm the status of the Charger with the rental company. Deps. Hunter and Lee searched the Charger and found some raw marijuana, as well as the three kilogram parcels of cocaine concealed in the upholstery.

{¶13} Dep. Lee also testified, with his body worn camera footage admitted as State's Ex. 2. Dep. Hunter contacted Dep. Lee and asked him to confirm the status of the Charger with the rental car, while Dep. Lee was en route to the traffic stop with another deputy that he was training. Dep. Lee testified that when he asked the women out of the Charger at Hunter's behest, he noticed a raw marijuana "bud" in the front passenger door, after which he and Dep. Hunter searched the Charger and discovered the cocaine.

(Doc. 5 at PageID 139–42 (internal citations omitted)).

## B. Conviction and Sentence

On December 17, 2020, the Delaware County grand jury charged Petitioner with one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(2) (Count 1) and one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A) (Count 2) with accompanying forfeiture and "major drug offender" specifications. (*Id.* at PageID 25–26). Petitioner pleaded not guilty. (*Id.* at PageID 29–30).

Petitioner moved to suppress evidence seized by police allegedly in violation of the Fourth Amendment. (*Id.* at PageID 32–36). The State opposed the motion to suppress. (*Id.* at PageID 38–47). The trial court held a hearing on Petitioner's Motion to Suppress

and denied it on February 23, 2021, finding that the traffic offense of following too closely justified the stop, and the stop was not unreasonably prolonged. (*Id.* at PageID 49–65).

On May 13, 2021, a jury trial commenced, and Petitioner was convicted on all counts but acquitted on the forfeiture specification. (*Id.* at PageID 68–70). On May 17, 2021, the trial court sentenced Petitioner to a mandatory sentence of 11 to 16.5 years imprisonment. (*Id.*).

### C. Direct Appeal

With the appellate court's leave to file a delayed appeal, Petitioner appealed his convictions to the Ohio Court of Appeals. (*Id.* at PageID 71–90). In his merit brief in support of his appeal, Petitioner raised one assignment of error: "The trial court erred by denying [Petitioner's] motion to suppress." (*Id.* at PageID 97). Specifically, Petitioner argued that "the trial court erred in finding the requisite probable cause or reasonable suspicion existed for a constitutional traffic stop," and that "the trial court erred in finding reasonable suspicion of criminal activity existed for the continued delay of the traffic stop." (*Id.*). The State submitted a responsive brief, (*id.* at PageID 112–25), and Petitioner replied. (*Id.* at PageID 127–35). On April 22, 2022, the Court of Appeals affirmed the judgment of the trial court. (*Id.* at PageID 137–51).

With the assistance of counsel, Petitioner appealed to the Ohio Supreme Court. (*Id.* at PageID 153–54). In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> 1. Suppression is required where a traffic stop must be supported by finding of probable cause or reasonable suspicion supported by a reasonable interpretation of facts.
>
> 2. Suppression is required where a traffic stop is subject to continued delay without any basis for a finding of reasonable suspicion of criminal activity.

(*Id.* at PageID 156–72).

On August 16, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.* at PageID 174).

### D. Federal Habeas Corpus

Petitioner, with the assistance of new counsel, filed the instant Petition for a writ of habeas corpus, which was received by the Court on August 16, 2023.  (Doc. 1).  Petitioner submitted the following two grounds for relief and facts in support:

> **GROUND ONE**: Petitioner's convictions were predicated upon evidence seized as the product of an unlawful search and seizure, and which should have been suppressed from use at trial.
>
> **Supporting Facts**: Law enforcement conducted a stop of Petitioner's vehicle for expired tags even though the officer initiating the stop was aware that, under COVID legislation effective at the time, the tags were not actually expired. Thereafter, rather than effectuating any discernable traffic stop or issuing a citation, officers engaged in a lengthy fishing expedition of any other possible offenses that Petitioner could have been committing, before finally claiming to observe a "marijuana bud" in the passenger door handle, leading to a full search of the vehicle and the discovery of approximately three kilograms of cocaine concealed in the roof and trunk.
>
> **GROUND TWO**: Ineffective Assistance of Appellate Counsel.
>
> **Supporting Facts**: Counsel was only recently retained and has not yet received any documents, files, or other materials from Petitioner or Petitioner's former counsel. As such, this Ground is raised only to preserve the issue while Counsel conducts an investigation regarding its merit. Naturally, should the record fail to support this Ground, it will be withdrawn. Should the record support this Ground, however, Counsel will provide a supplemental statement of facts.

(*Id.* at PageID 5, 7).

Respondent filed his answer and the state court record.  (Docs. 5, 6).  Petitioner replied but withdrew his Ground Two claim.  (Doc. 9).

## II. DISCUSSION

As his sole remaining ground for relief, Petitioner asserts in Ground One that his conviction was based on evidence which the trial court should have suppressed because Petitioner's

conviction was secured exclusively through evidence seized in violation of the Fourth Amendment. (Doc. 1 at PageID 5). Respondent submits Petitioner's claim is not cognizable as Petitioner "does not claim that he was prevented from raising these issues at the suppression hearing or on appeal" and instead "merely disputes the correctness of the state court's decision on the Fourth Amendment claim and does not point to any impediment frustrating the presentation of the claim," which does not allow for federal habeas review under the Supreme Court's holding in *Stone v. Powell.* (*Id.* at PageID 973–74).

"[W]here the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). To ascertain whether a petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court, the Sixth Circuit described two inquiries a federal habeas court must make: (1) whether the state has provided a procedural mechanism through which a petitioner could raise a Fourth Amendment claim, and (2) whether this particular petitioner's claim was frustrated because of a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982), cert. denied, 549 U.S. 948 (1982). Petitioner admits that Ohio provides adequate mechanisms for the litigation of Fourth Amendment claims and that he fully availed himself of those processes: He moved in the trial court to suppress the challenged evidence, appealed the trial court's denial of that motion to the Ohio appeals court, which rejected his claim, and finally appealed that decision to the Ohio Supreme Court, which declined to accept jurisdiction of the appeal. (Doc. 5 at PageID 48 93–110, 137–51, 153–54, 156–72, 174).

So, Petitioner's position is that review of his claim was frustrated during Ohio's process because the Ohio state courts findings of facts addressing his Fourth Amendment suppression

6

claim were "either incorrect" under state law or "misleading," depriving him of a full and fair review. (Doc. 9 at PageID 987–89). Put another way, Petitioner submits that this Court should proceed to review the merits of his complaint under 28 U.S.C. § 2254(d)(2) because *Stone's* bar does not apply, as the litigation of his suppression claim in Ohio state courts was not full or fair. (*Id*).

While the *Stone* Court did not expressly define what it meant by "an opportunity for full and fair litigation," the Sixth Circuit in *Riley v. Gray* did. 674 F.2d 525 (6th Cir. 1982). In discussing what constitutes "full and fair," the Sixth Circuit explained that "in deciding whether [a] petitioner received an opportunity for a full and fair hearing in the state court, [a reviewing court] must determine whether the state court took "cognizance" of the petitioner's claim. *Riley*, 674 F.2d at 525. Relevant here, the *Riley* Court specifically noted that a consideration of cognizance does not allow a reviewing court to inquire into the "correctness" of state court decisions. *Id.* at 526 (explaining that inquiring as to whether a state court determination was correct "would be inconsistent with *Stone*").

This is so, said the Sixth Circuit, because:

> *Stone* is based on the perception that the exclusionary rule should not be applied in federal habeas review of a state conviction because of its limited utility in that setting. *Stone*, 428 U.S. at 494. Implicit in the Court's analysis is the belief that if an issue has been considered at trial, and on direct appeal of the state court conviction, then the issue is close, involving nuances of the fourth amendment which may be too complex to allow easy application by police officers. In these situations, the special deterrent value of the exclusionary rule is at its nadir and should not be applied. *Id.* at 538-40 (White, J., dissenting). Thus, the value of reviewing these claims collaterally is small. *Stone* is predicated on the Court's assessment of the exclusionary rule's utility; application of the rule is justified when the state court denies the petitioner a full and fair opportunity to litigate his claims. *Id.* at 494. We perceive no difference in the utility of the exclusionary rule where an opportunity is frustrated because of an inadequate procedural mechanism or where an opportunity is frustrated because of the manner in which the mechanism is applied. In either instance, the consequence to the defendant is the same: an

opportunity to litigate the claim has been denied because of a *procedural* shortcoming.

*Id.* at 525–26 (emphasis added).

In a later case, the Sixth Circuit described two considerations underpinning *Stone's* general rule against federal habeas review of Fourth Amendment suppression of evidence claims. First, the "key purpose of federal habeas corpus is to free innocent prisoners[, and] whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty." *Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013) (citing *Powell*, 428 U.S. at 490, 493). Second, "exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution[, so] [a]ny deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great." *Id.* Here, the argument Petitioner makes—that the officer who stopped him and searched his vehicle violated the Fourth Amendment—is precisely the type of argument the Sixth Circuit explained was precluded by *Powell*. That is because the allegedly illegal search itself has no bearing on Petitioner's guilt or innocence.

Put another way, as noted by Respondent, under *Powell*, "[t]he relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided." (Doc. 6 at PageID 973 (citing *Raymond v. Warren*, No. 09-13648, 2011 U.S. Dist. LEXIS 66266, at *12-13 (E.D. Mich. June 20, 2011))). Here, there is no question that Petitioner pursued his claim robustly at trial through his motion to suppress and then on direct appeal. It is the correctness of the outcome of the state courts' decisions that Petitioner takes issue with, not the availability of the process.

The correctness of a state court's decision on a Fourth Amendment claim "is simply irrelevant" because it does not bear on whether petitioner had a full and fair opportunity to litigate his claim. *Brown v. Berghuis*, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009); *see also Mitchell v.*

8

*Sheldon*, No. 3:08-cv-2899, 2009 WL 1911841, at *3 (N.D. Ohio June 30, 2009); *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994); *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986). Accordingly, even a state court's erroneous determination of a Fourth Amendment claim, as is alleged here by Petitioner, does not overcome the *Stone v. Powell* bar to habeas corpus review by this Court. *Brown*, 638 F. Supp. 2d at 812.

Thus, the Undersigned **RECOMMENDS** that Ground One be **DISMISSED with prejudice** as non-cognizable under *Stone v. Powell*. Further, to the extent that Ground One is presented solely as a question of Ohio law, it should likewise be dismissed as non-cognizable. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962. As Petitioner withdrew his second ground, (Doc. 9), there is no basis for this case to proceed.

## III. RECOMMENDED DISPOSITION

**ACCORDINGLY,** the Undersigned **RECOMMENDS** that this action be **DISMISSED with prejudice** as the relief sought is not cognizable in this habeas proceeding.

**IT IS SO RECOMMENDED**.

Date: July 24, 2024               */s/ Kimberly A. Jolson*
                                  Kimberly A. Jolson
                                  UNITED STATES MAGISTRATE JUDGE

9

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.